IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) |
| SOUFIAN AMRI | ) |
| | )   No. 1:17-CR-50 |
| and | ) |
| | ) |
| MICHAEL QUEEN, | ) |
| | ) |
| Defendants. | ) |

Government's SECOND CORRECTED Post-Hearing Memorandum Regarding Violations
Of 18 U.S.C. § 1001 that Involve International Terrorism[1]

The facts admitted in this case prove that the violations of 18 U.S.C. § 1001 charged in Counts 4 and 5 of the Indictment "involve international terrorism," as defined in 18 U.S.C. § 2331. Amri and Queen falsely denied that Qamar attempted to join the Islamic State in 2014. As a result, those false statements involved Qamar's attempt to provide material support to a designated terrorist organization, in violation of 18 U.S.C. § 2339B. A violation of Section 2339B "involves" international terrorism for purposes of Section 2331. In any event, even if every violation of Section 2339B does not necessarily involve international terrorism for purposes of Section 2331, the one at issue in this case did.

Background

The Indictment in this case charged that "[o]n or about June 24, 2016, in Fairfax County in the Eastern District of Virginia, [the defendants] did knowingly and willfully falsify, conceal, and cover up by a trick, scheme, and device a material fact, and [the

---

[1] Docket Item #69 mistakenly omitted the word "to" in the fourth line of the first full paragraph on Page 4, and bore an incorrect page citation on the 3rd-to-last line on Page 5. This pleading corrects those errors (and revises the margins on this page) but is otherwise identical to Docket Item #69. This pleading also deletes the stray words "[Type Here]"at the bottom of this page on Docket Item #70.

defendants] made materially false, fictitious, and fraudulent statements and representations, in a matter involving international terrorism and within the jurisdiction of the executive branch of the Government of the United States." Dkt. No. 31 (Counts 4 and 5) (April 18, 2017). "In particular, [the defendants] falsely told agents of the Federal Bureau of Investigation ("FBI"), who were conducting an international-terrorism investigation, that [the defendants] did not know anyone who supported ISIS, and [the defendants] falsified, concealed, and covered up facts [they] knew relating to Haris Qamar's support for ISIS, a foreign terrorist organization, including Qamar's 2014 attempt to travel overseas for the purpose of joining ISIS." *Id.* The Indictment also charged that the defendants "falsely told agents of the FBI that the only person [they] knew who supported ISIS was a 'tall, thin, Indian'" individual, which the defendants "did for the purpose of falsifying, covering up, and concealing material facts from the FBI." *Id.*

## Argument

The statute, 18 U.S.C. § 1001, provides that one who makes a false statement:

> shall be fined under this title, imprisoned not more than 5 years or, if the offense involves international or domestic terrorism (as defined in section 2331), imprisoned not more than 8 years, or both.

In turn, 18 U.S.C. § 2331(1) states that the term "international terrorism" means activities that—

> (A) involve violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States or of any State, or that would be a criminal violation if committed within the jurisdiction of the United States or of any State;
>
> (B) appear to be intended—
>
> > (i) to intimidate or coerce a civilian population;

>> (ii) to influence the policy of a government by intimidation or coercion; or
>
> (iii) to affect the conduct of a government by mass destruction, assassination, or kidnapping; and
>
> (C) occur primarily outside the territorial jurisdiction of the United States, or transcend national boundaries in terms of the means by which they are accomplished, the persons they appear intended to intimidate or coerce, or the locale in which their perpetrators operate or seek asylum.

In essence, the additional element of a false statement involving international terrorism for purposes of Section 1001 is established where a defendant's false statement is made in an ongoing terrorism investigation that relates to violent acts occurring outside the United States (or transcending national boundaries) that are intended to intimidate a civilian population or a government.[2] A violation of Section 2339B meets this criteria. In any event, the factual context of the false statements made in this case do, as well.

### A. A Violation of Section 2339B Necessarily Involves "Violent Acts or Acts "Dangerous to Human Life"

As noted above, as defined in Section 2331, "international terrorism" requires "violent acts or acts dangerous to human life." The defendants' argument essentially is that a violation of Section 2339B cannot meet the definition of international terrorism under Section 2331 because Section 2339B does not explicitly proscribe violent conduct. That argument was rejected by the Seventh Circuit in *Boim v. Holy Land Found. for Relief & Dev.,* 549 F.3d 685 (7th Cir. 2008). "Section 2331(1)'s definition of

---

[2] According to the statute's legislative history, Congress enhanced the maximum penalty for false statements in violation of Section 1001 from five years to eight years "for obstruction of justice in terror investigations." 150 Cong. Rec. S 11997.

3

international terrorism . . . includes not only violent acts but also 'acts dangerous to human life that are a violation of the criminal laws of the United States.'" *Id.* at 690.

In *Boim*, the Seventh Circuit held that giving money to the Palestinian terrorist group Hamas met the definition of 2331. *Id.* ("Giving money to Hamas, like giving a loaded gun to a child (which also is not a violent act), is an 'act dangerous to human life.'"). Therefore, the act of attempting to provide oneself to a designated terrorist organization similarly constitutes an "act dangerous to human life that [is] a violation of the criminal laws of the United States." For this reason, alone, the defendants' false statements to the FBI regarding Qamar's attempt to travel to join ISIS certainly "involved international terrorism" for purposes of Section 2331.

It is a matter of public record that the Islamic State (also known as ISIS) was designated by the United States Department of State as a foreign terrorist organization. It further is a matter of public record that, for an organization to be designated a "foreign terrorist organization" to which Section 2339B is applicable, the Secretary of State must find that the organization engages in violent activities involving hijacking or sabotage of conveyances such as aircraft, vessels, or vehicles; kidnaping to coerce third parties into doing or abstaining from doing some act; violently attacking internationally protected persons; conducting assassinations; or using weapons with the intent to endanger the safety of individuals or cause damage to property. See 8 U.S.C. § 1182(a)(3)(B) (codifying 212(a)(3)(B) of the Immigration and Nationality Act); 8 U.S.C. § 1189(a)(1)(B) (codifying Section 219(a)(1)(B) of the Act); *see also Lindh*, 212 F. Supp. 2d at 579 n.89.

The accomplishment of any of these "terrorist activities" plainly involves "violent acts or acts dangerous to human life" as set forth in Section 2331. Providing material support to an organization that has been designated under these criteria necessarily involves "violent acts or acts dangerous to human life" as set forth in Section 2331, as well. *See United States v. Goba*, 220 F. Supp.2d 182, 187-88 (W.D.N.Y. 2002) (concluding that Section 2339B constitutes a "crime of violence" under the Bail Reform Act upon consideration of the nature of designated foreign terrorist organizations). After all, even if an attempt to violate Section 2339B somehow did not involve "violent acts," it hardly could not have involved "acts dangerous to human life."

As the Supreme Court recognized, Congress prohibited the provision of material support or resources to organizations that have been designated as terrorist organizations, based on a finding that these organizations "are so tainted by their criminal conduct that any contribution to such an organization facilitates that conduct." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 7 (2010). In finding that Section 2339B's proscriptions do not implicate First Amendment rights, the Supreme Court noted that even material support "meant to promot[e] peaceable, lawful conduct" is proscribed because, among other things, "'[m]aterial support' is a valuable resource by definition. Such support frees up other resources within the organization that may be put to violent ends." *Id*. at 30. As a result, a violation of Section 2339B inherently furthers the risk that violent acts or acts dangerous to human life will be undertaken. *See Goba*, 240 F.Supp.2d at 188.

In addition to involving acts that were dangerous to human life, Qamar's attempt to join ISIS necessarily involved violent acts. For this reason, attempts to provide

5

material support to designated terrorists in violation of 18 U.S.C. § 2339B constitute "crimes of violence" for purposes of 18 U.S.C. § 924(c). Through similar reasoning, attempts to provide material support to designated terrorists in violation of 18 U.S.C. § 2339B constitute "violent acts or acts dangerous to human life" for purposes of 18 U.S.C. § 2331.

Arguments similar to that made by the defendants here have been made in this courthouse - - and rejected -- with respect to whether Section 2339B was a "crime of violence" for purposes of Section 924(c).[3] For example, in *United States v. Lindh*, 212 F. Supp. 2d 541 (E.D. Va. 2002), Judge Ellis held that the substantive and conspiracy offenses of knowingly providing material support and resources to al-Qaeda, in violation of § 2339B, were "crimes of violence" within the meaning of 18 U.S.C. § 924(c)(3)(B). In rejecting defendant's motion to dismiss the § 924(c) count, Judge Ellis held that

> [p]roviding material support or resources to a terrorist organization—which may include "weapons, lethal substances, [or] explosives," but may be just as deadly if it is "currency or monetary instruments" —is categorically a crime of violence, as Congress recognized when it enacted Section 2339B. Furthermore, Congress was clearly mindful of the violent nature of this crime because it imposed greater penalties "if the death of any person results." **Simply put, when one provides material support or resources to a terrorist organization, there is a "substantial risk that**

---

[3] Many challenges have been made to constitutionality of the definition of a crime of violence under Section 924(c) since the Supreme Court held in *Johnson v. United States*, 135 S.Ct. 2551 (2015), that the definition of "crime of violence" in the Armed Career Criminal Act was unconstitutionally vague. To date, however, only one Court of Appeals has upheld a vagueness challenge to the constitutionality of Section 924(c), while four others have rejected such challenges. *See Ovalles v. United States,* ___ F.3d ___, No. 17-10172 (5th Cir. June 30, 2017) (compiling cases). Unless or until the Fourth Circuit rules on the issue, this Court should deem the definition of "crime of violence" in Section 924(c) to remain valid. In any event, the constitutionality of the definition of a crime of violence under Section 924(c)(3) is irrelevant to the analysis of whether a violation of Section 2339B involves "violent acts or acts dangerous to human life" for purposes of Section 2331.

6

> **physical force against the person or property of another may be used in the course of committing the offense."**

*Id*. at 579 (emphasis added; internal citations omitted).

Judge Ellis continued, holding that § 924(c) "requires assessment of the risks that may result from providing material support or resources to terrorists in a manner that Section 2339B forbids." *Id*. at 579-80. "It takes little imagination to conclude that providing material support and resources to a terrorist organization creates a substantial risk that the violent aims of the terrorists will be realized. Violence, therefore, is intrinsic to the crimes with which Lindh is charged." *Id*. at 580. *See also United States v. Ahmed*, S.D.N.Y. No. 10 CR 131 PKC, 2012 WL 983545, at *3 (S.D.N.Y. Mar. 22, 2012) ("Therefore, because sections 2339B and 2339D are crimes of violence that can be prosecuted in a Court of the United States, section 924(c) applies to those statutes and the underlying extraterritorial conduct alleged in this case.").

This Court itself reached a similar result in *United States v. Khan*, 309 F.Supp.2d 789, 823 (E.D. Va. 2004), *aff'd,* 461 F.3d 477 (4th Cir. 2006). In that case, defendants Royer and Khan moved pre-trial to dismiss the counts of the indictment alleging that, in violation of Section 924(c), they used firearms in furtherance of violations of Section 2339B; they argued that violations of Section 2339B could not be a predicate for a violation of Section 924(c) because Section 2339B was not necessarily a crime of violence. This Court rejected the argument that Section 2339B was necessarily not a crime of violence, and ruled that it could not decide whether the 924(c) counts could be

predicated on violations of Section 2339B until the proof at trial established the predicate facts for the material support that was allegedly provided.[4]

After the trial, this Court rejected the argument that the charges upon which the defendants were convicted (18 U.S.C. 960 and 2339A, and 50 U.S.C. 1705) were not crimes of violence even though they did not explicitly contain as an element the use of violence:

> We find that each of these predicate crimes - conspiracies to violate the Neutrality Act, levy war against the United States, **supply services to the Taliban**, and **provide material support to LET** - are crimes of violence as defined by 18 U.S.C. § 924(c)(3). That subsection defines a crime of violence as a felony offense that "(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." ***The predicate crimes clearly fit within this definition.***

*United States v. Khan*, 309 F.Supp.2d at 823 (emphasis added). On appeal, that conclusion was affirmed. *United States v. Khan,* 461 F.3d 477, 490 (4th Cir. 2006) ("This evidence amply supports a finding that Chapman used firearms at the LET camp in furtherance of the conspiracy to commit a crime of violence"). Through analogous reasoning, this Court should find that a violation of Section 2339B involves "violent acts or acts dangerous to human life."

---

[4] The relevant excerpt from this Court's decision on the pre-trial motion is attached as an exhibit to this pleading. Ultimately, this Court did not rule on whether the violations of Section 2339B charged in that case were crimes of violence for purposes of Section 924(c), because the 2339B charge against Royer was dismissed pursuant to a plea agreement, and this Court rendered a "not guilty" verdict on the 2339B charge against Khan. *Khan*, 309 F.Supp.2d 789.

8

Here, Counts 4 and 5 charge that the defendants made false statements about Qamar's attempt to join ISIS in 2014 and, thereby, provide material support to a designated terrorist organization, in violation of 18 U.S.C. § 2339B. For many of the same reasons that Section 2339B has been found to be a crime of violence for purposes of Section 924(c), the false statements made by Amri and Queen about Qamar's attempt to violate Section 2339B involve "international terrorism" for purposes of Section 1001.

### B.   Even if Every Violation of Section 2339B Does Not Necessarily Involve "International Terrorism" for Purposes of Section 2331, This One Did

Even if every violation of Section 2339B does not necessarily meet the definition of Section 2331, the facts of the case sufficiently establish that the defendants' false statements "involve international terrorism" under Section 2331. It is not disputed that this case involves the defendants' false statements about an attempt by Qamar to join the Islamic State. Further, there is no dispute that ISIS regularly and routinely engages in violent acts and acts dangerous to human life. As a result, Qamar's attempt to wallow in ISIS's depravity implicitly involved violent acts and acts dangerous to human life.

The facts of a prosecution brought in the Eastern District of New York are instructive. In *United States v. Shehadeh*, the defendant was charged with making false statements about his attempt to travel to Pakistan in 2008 to join a group of Islamist terrorists. The jury was given a special verdict form to decide whether defendant's misstatements "involve[d]" international terrorism." The jury found that, with respect to two of the charges, "that the lies Shehadeh told the agents "involved international terrorism." 2013 WL 6049001, at *1 (E.D.N.Y. Nov. 14, 2013). Just as the false statements about Shehadeh's attempt to travel to Pakistan to join a terrorist group were

9

factually sufficient to base a special verdict for involvement in international terrorism for purposes of Section 2331, the false statements made by Queen and Amri were as well.[5]

## Conclusion

For the aforementioned reasons, the Court should find the defendants guilty of making false statements involving international terrorism.

                                        Respectfully submitted,

                                        Dana J. Boente
                                        United States Attorney

By:     /s/_____
       Colleen E. García
       Gordon D. Kromberg
       Assistant United States Attorneys

---

[5] The defendants' reliance on *United States v. Simpson*, No. CR 10-055-PHX-MHM 2011 WL 905375 (D. Ariz. 2010), is misplaced. In that case, the government failed to establish that the defendant lied about any intent to join a designated foreign terrorist organization as opposed to merely travel to Somalia to engage in some sort of jihad. In this case, however, there is no question that, based on the Stipulation of Facts, both defendants knew that Qamar tried to travel to join ISIS, a terrorist organization that engages in violent acts that are dangerous to human life. We cannot help but note that, in 2015, the *Simpson* defendant was killed while engaging in an attack on what he perceived to be enemies of Islam in Garland, Texas. *See, e.g., http://www.cnn.com/2015/05/05/us/garland-texas-prophet-mohammed-contest-shooting/index.html*

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 3, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification to all counsel of record.

                                                        /s/
                                      Colleen E. García
                                      Gordon D. Kromberg
                                      Assistant United States Attorneys
                                      United States Attorney's Office
                                      Eastern District of Virginia
                                      2100 Jamieson Ave
                                      Alexandria, VA 22314-5794
                                      Phone: (703) 299-3880
                                      Fax: (703) 299-3980
                                      Email: Colleen.E.Garcia@usdoj.gov