IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | |
| SOUFIAN AMRI ) | |
| ) | No. 1:17-CR-50 |
| and ) | |
| ) | |
| MICHAEL QUEEN, ) | |
| ) | |
| Defendants. ) | |

### GOVERNMENT'S POST-HEARING MEMORANDUM
### REGARDING 18 U.S.C. § 1512(b)(3)

At the hearing in this case on June 29, 2017, Soufian Amri argued that the stipulated facts did not prove that his attempt to persuade Michael Queen to mislead the FBI was done "corruptly" for purposes of 18 U.S.C. § 1512(b)(3). Amri's argument relied on the existence of a circuit split on the meaning of "corruptly" in the context of Section 1512, as described in *United States v. Chujoy*, 207 F.Supp.3d 626 (W.D. Va. 2016). That argument is a "red herring," because the issue at stake in the circuit split described in *Chujoy* is not present in this case. To the contrary, Amri's conduct constituted "corrupt" persuasion under any appropriate standard.

Count 2 of the Indictment in this case charged:

> On or about June 24, 2016, in Fairfax County within the Eastern District of Virginia, defendant SOUFIAN AMRI did knowingly and unlawfully attempt to corruptly persuade another person with the intent to hinder, delay, and prevent the communication to a law enforcement officer or judge of the United States of information relating to the possible commission of a Federal offense. In specific: AMRI did attempt to corruptly persuade Michael Queen to refrain from disclosing to the FBI that Haris Qamar supported ISIS and, in 2014, attempted to travel overseas for the purpose of joining ISIS.

In this case, the stipulated facts include:

- In 2015 and 2016, Soufian Amri and Michael Queen were friends with Qamar. Qamar spent a significant amount of time at the gaming center that Amri and Queen operated. They knew that Qamar was a frequent supporter of ISIS on the internet, and they knew that he had planned to travel to join ISIS in 2014 and had purchased an airline ticket to do so. Dkt. No. 56 at ¶ 11.

- On June 24, 2016, FBI agents interviewed Amri at the business he shares with Queen, in part to learn additional information about Qamar, including but not limited to his attempted travel to join ISIS, and in part about a pro-ISIS Facebook post made by Queen. Amri was asked if he knew anyone who voiced support for ISIS. He stated "particularly, not really . . . that comes here no." Amri also said that he knew one person who—long ago—mentioned traveling for the purpose of joining ISIS. Amri described that individual as a tall, thin, Indian kid, whom Amri had not seen for a long time. Dkt. No. 56 at ¶ 12.

- Later that day, FBI agents observed Amri talking to Queen at their business, and then interviewed Queen. Queen said that he did not know of anyone who voiced support for ISIS or posted pro-ISIS materials online. Queen identified the tall Indian individual referenced by Amri as "Sunite," but said that he did not know if Sunite was serious about supporting ISIS. Queen also said that he did not know of anybody who tried to travel overseas for the purpose of joining ISIS. Dkt. No. 56 at ¶ 13.

- On June 28, 2016, a confidential witness ("CW") recorded a conversation between Queen, Qamar, and CW. In that conversation, Queen told Qamar and CW about the FBI interviews on June 24, 2016. Queen said the FBI asked if Queen and Amri knew anyone who was going to join ISIS, or otherwise was pro-ISIS. Queen told them he said to the FBI, "I don't know, we threw some . . . Hindu dude that we used to know underneath the bus." Queen said, "I'm never going to throw a Muslim underneath the bus to try to do the right thing." Dkt. No. 56 at ¶ 14.

- On July 8, 2016, Qamar was arrested and charged with attempting to provide material support to ISIS, in violation of 18 U.S.C. § 2339B, in part on the basis of Qamar's attempts to send money to ISIS, as well as videos of local landmarks for use in an ISIS publication to encourage lone-wolf attacks in the United States. Dkt. No. 56 at ¶ 17.

- On July 8, 2016, shortly after Qamar's arrest, FBI agents spoke to Amri again in another recorded conversation. Amri said he has known Qamar since 2009. Amri said that Qamar was obsessed with ISIS and constantly talked about ISIS. Amri said that he knew that Qamar and the CW supported ISIS, but he failed to mention them to the FBI agents on June 24, 2016, because he did not want Qamar and the CW to be questioned by the FBI. Dkt. No. 56 at ¶ 18.

- In the same interview, Amri admitted that Qamar told him in 2014 about Qamar's plan to travel to Turkey for the purpose of joining ISIS. Amri said Qamar ended up not going after Qamar's father took away Qamar's expired passport so that Qamar could not get a new passport. Amri said that he gave Qamar $50 for basic necessities after Qamar was unable to get a refund for his $700 airline ticket to Turkey. Dkt. No. 56 at ¶ 19.

- Also in Amri's conversation with the FBI agents on July 8, 2016, he stated that after he was interviewed by the FBI on June 24, 2016, he talked with Queen. Amri admitted that he asked Queen not to mention Qamar to the FBI. Dkt. No. 56 at ¶ 20.

- In the same interview with the FBI on July 8, 2016, Amri said that after he was interviewed by the FBI on June 24, 2016, he told Qamar about the interview. Amri told Qamar not to worry because Amri and Queen did not mention Qamar to the FBI. Dkt. No. 56 at ¶ 21.

In pertinent part, Section 1512(b)(3), provides:

> Whoever knowingly . . . corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to— hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense . . . shall be [punished].

The "corruptly persuades" language of Section 1512(b)(3) encompasses "non-coercive attempts by a target of a criminal investigation to tamper with prospective witnesses." *United States v. Davis*, 380 F.3d 183, 196 (4th Cir. 2004). This includes attempts "to persuade someone to provide false information to federal investigators." *United States v. Farrell*, 126 F.3d 484, 488 (3d Cir. 1997). Amri is guilty of Count 2 because his solicitation of Queen to mislead the FBI about Qamar's attempt to join ISIS constituted "corrupt" persuasion.

At the hearing, Amri relied on the circuit split described in *Chujoy* regarding the meaning of "corruptly persuades" for purposes of Section 1512. The question that divides appellate courts in interpreting Section 1512, however, is not at issue in this case. The Second and Eleventh Circuits hold that "corrupt persuasion" encompasses a broad range of persuasion—

including efforts to encourage witnesses to withhold information—so long as a defendant is motivated by an "improper purpose," while the Third and Ninth Circuits carve out exceptions for witnesses who have a legal right to avoid cooperating with law enforcement.

Cases from the Third and Ninth Circuits hold that defendants do not run afoul of Section 1512 if they encourage witnesses to invoke their Fifth Amendment rights or the marital privilege, even if the defendants intend by doing so to hinder criminal investigations. The safe harbors described in these cases, however, depend on the existence of a privilege to withhold information from law enforcement in the first place. *See, e.g., United States v. Doss*, 630 F.3d 1181, 1187–88 (9th Cir.2011) (finding no corrupt persuasion where the defendant "appealed to his wife to exercise her marital privilege not to testify against him"); *United States v. Farrell*, 126 F.3d 484, 488 (3d Cir.1997) (finding that corrupt persuasion does not include "a noncoercive attempt to persuade a co-conspirator who enjoys a Fifth Amendment right not to disclose self-incriminating information about the conspiracy to refrain, in accordance with that right, from volunteering information to investigators").

In this case, however, Amri was not encouraging Queen to assert any privilege to withhold from the FBI information about Qamar's travel. To the contrary, Queen had no privilege to do so. Providing truthful information about Qamar would not have incriminated Queen, so Queen had no Fifth Amendment privilege to withhold from the FBI truthful information about Qamar. As a result, even under the standards of the Third and Ninth Circuits, Amri's persuasion of Queen to mislead the FBI constituted "corrupt persuasion." *See Farrell*, 126 F.3d at 489 n.3 (noting that "[i]n the absence of a privilege, society has the right to the information of citizens regarding the commission of crime, and it can be argued that

4

discouraging another who possessed no privilege from honoring this civic duty involves some culpability not present when coconspirators with Fifth Amendment privileges converse").

Regardless of any privilege issue, however, the issue dividing the circuits also is irrelevant to this case because Amri did not merely encourage Queen to withhold information, but he also encouraged Queen to provide *false* information. Amri encouraged Queen to provide false information to the FBI about a "tall, thin, Indian" man. As the stipulated facts show, Amri and Queen provided the same false information about "Sunit" to the FBI in order to divert the FBI's attention away from Qamar. Further, Queen told Qamar and CHS that "*we* threw some . . . Hindu dude that we used to know underneath the bus" (emphasis added). In referring to "we," Queen obviously was referring to action that he took in concert with Amri. Their providing the same false story to the FBI for the same reason hardly was a coincidence; the Court can readily infer that Queen provided the same false story to the FBI that Amri already had provided because Amri encouraged Queen do so. As a result, Amri's persuasion of Queen to attempt to mislead the FBI constitutes "corrupt" persuasion for purposes of Section 1512 under any applicable standard.

The words "corruptly persuade" also appear as one means of the obstruction of justice in which Amri and Queen were alleged in Count 1 of the Indictment to have conspired to engage. The Court need not focus on that language in Count 1, however, because the government's proof established that Amri and Queen conspired to obstruct justice through another means set forth in Section 1512 and alleged in Count 1. The Indictment charged that they conspired to "engage in misleading conduct toward another person with the intent to hinder, delay, and prevent the communication to a law enforcement officer or judge of the United States of information relating to the possible commission of a Federal offense.*"*

5

"In order to secure a guilty verdict under § 1512(b)(3) [where the government charges obstruction of justice on the basis of "misleading conduct"] "the Government is obliged to demonstrate that a defendant knowingly (1) 'engage[d] in misleading conduct toward another person,' (2) with the intent to 'hinder, delay, or prevent the communication to a [federal] law enforcement officer ... of information relating to the commission or possible commission of a Federal offense.' 18 U.S.C. § 1512(b)(3)." *United States v. Perry,* 335 F.3d 316, 320-21 (4th Cir. 2003).

For purposes of Section 1512, the phrase "misleading conduct" is defined as:

(A) Knowingly making a false statement;

(B) Intentionally omitting information from a statement and thereby causing a portion of such statement to be misleading, or intentionally concealing a material fact, and thereby creating a false impression by such statement; . . . or

(E) Knowingly using a trick, scheme, or device to mislead.

18 U.S.C. § 1515(a)(3).

Amri and Queen indisputably engaged in misleading conduct towards the FBI agents who interviewed them. They knowingly made false statements about their knowledge of Qamar's support for ISIS and Qamar's attempt to travel to join ISIS. They knowingly made false statements about a "tall thin Indian guy" to divert the FBI's attention away from Qamar. They intentionally omitting information about Qamar from their statements, and thereby caused portions of such statements to be misleading. They intentionally concealed material facts about Qamar, and thereby created false impressions. Finally, their concerted action to tell the FBI the same fabricated story about "Sunit" to divert the FBI's attention from Qamar constituted the use of a trick, scheme, or device to mislead.

6

A similar analysis applies to Count 3, in which Queen was charged with engaging in misleading conduct towards the FBI agents who interviewed him, with the intent to hinder, delay, or prevent the communication to a federal judge or law enforcement officer of information relating to the commission or possible commission by Qamar of a federal offense. *See United States v. Cobb*, 905 F.2d 784, 790 (4th Cir. 1990) (upholding convictions under Section 1512(b)(3) for the use of corrupt means to cause a police witness to make false statements to a judge as part of an application for an arrest warrant).

For the foregoing reasons, the Court should find the defendants guilty of obstructing justice and conspiring to do so, in violation of 18 U.S.C. §§ 371 and 1512(b)(3).

    Respectfully submitted,

    Dana J. Boente
    United States Attorney

By:    ____/s/_____
    Colleen E. García
    Gordon D. Kromberg
    Assistant United States Attorneys

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 4, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification to all counsel of record.

                                            /s/
                                      Colleen E. García
                                      Gordon D. Kromberg
                                      Assistant United States Attorneys
                                      United States Attorney's Office
                                      Eastern District of Virginia
                                      2100 Jamieson Ave
                                      Alexandria, VA 22314-5794
                                      Phone: (703) 299-3880
                                      Fax: (703) 299-3980
                                      Email: Colleen.E.Garcia@usdoj.gov