IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) ) ) | |
| v. | ) ) | Case No. 1:17-CR-50 (LMB) |
| **MICHAEL QUEEN,** | ) ) ) | |
| Defendant. | ) ) | |

**RESPONSE TO THE GOVERNMENT'S POST TRIAL MEMORANDUM**

COMES NOW, the Defendant MICHAEL QUEEN, by and through counsel, and respectfully responds to the government's various post trial memoranda. The Defendant endorses and incorporates by reference the arguments contained in his codefendant Soufian Amri's Response to the Government's Post Trial Memorandum [Docket No. 73] where applicable (such as the section 1001a "international terrorism" element) as the facts of both cases are nearly identical. The Defendant respectfully submits this response to provide supplemental argument where the facts of his case differ from those of Mr. Amri.

The first count against Mr. Queen alleges that Queen and Amri conspired with each other for the purpose of preventing the FBI from learning about and investigating Haris Qamar's support for the foreign-terrorist organization known as "Isis." The well-established elements of a conspiracy (An illegal agreement, criminal intent, and an over act) must be proven in this matter before looking to the substantive objects of the alleged conspiracy.

The evidence in this case presented to the Court via the Statement of Stipulated Facts fails to establish that Queen and Amri ever entered into an illegal agreement. The focal point being the lack

of an agreement or a meeting of the minds between the defendants. The evidence in this case does not establish that Queen and Amri had a common understanding about trying to defraud the government.

The evidence establishes that prior to his interview with agents on June 24, Queen was warned by Amri to be careful what he said about Qamar because he may be linked to Isis and Queen may be labeled the same. The evidence in this case does not prove that Amri told Queen to lie about Qamar. At worst, this was cautionary speak from Amri to Queen. Queen was left to his own volition on how to interpret that warning and how to act thereafter. The evidence does not establish that there was ever an affirmation or agreement to proceed with a specific course of conduct.

Even if this Court were to find that Queen and Amri entered into an agreement, the evidence fails to establish that it was done with criminal intent. Amri was interviewed by the agents first and briefly spoke to Queen before he went in for his interview. To this point, anything that Amri did or did not say in his interview, he did so of his own choosing. It is unrefuted that on June 24 the agents were in part investigating a Facebook post made by Queen three days prior. This adds a unique element in this matter for Queen because at that time, by the government's assertion, he was being investigated for his Facebook post. To be faced with FBI agents asking questions about people that may support Isis, just three days after you post a status that includes the word Isis, would be enough to bring about fear of prosecution in anyone. It is not outlandish to think that Queen would not mention Qamar out of fear of being associated with or linked to anything problematic. A desire to not be linked to Isis does not supply the requisite criminal intent to establish a conspiracy between Queen and Amri.

The third count of the indictment charges that Queen engaged in misleading conduct with the intent to hinder, delay, and prevent the communication relating to the possible commission of a

federal offense. The indictment alleges that Queen and Amri knew that agents were investigating whether individuals known to them had attempted to provide material support to Isis, a designated foreign terrorist organization. The facts of this case do not establish that Queen had any intent to hinder, delay, or prevent communication relating to the possible commission of a federal offense. The facts in this case only establish that Queen was at best aware of one federal offense – lying to the FBI. Further, there is no evidence to suggest that Queen was aware that the agents were investigating "material support." There is no evidence that the agents provided Queen with an explanation of material support or that he had any prior knowledge of the subject. Queen's intent is clearly demonstrated in his July 8 interview with the agents when he tells them what Amri told him before his first interview. Queen was worried about being linked to Isis and probably worried about being linked to Qamar at all.

  The government advances that Queen and Amri described the "tall, thin Indian" individual in a way that was intended to hinder, delay, and prevent communication. This argument assumes a fact not in evidence, that Queen and Amri agreed or even discussed what to specifically tell the agents. Paragraph 12 states "Amri also said that he knew one person who – long ago – mentioned traveling for the purpose of joining Isis. Amri described the individual as a tall, thin, Indian kid, whom Amri had not seen for a long time." It is important to note from these facts that Amri does not give the agents a name for this individual. Paragraph 13 goes on to state "Queen identified the tall Indian individual referenced by Amri as "Sunite," but said that he did not know if Sunite was serious about supporting Isis." It is possible, and likely given these facts, that the tall thin Indian is first mentioned in Queen's interview by the agents. Queen would be responding to information provided by the agents from their interview of Amri and he provided them with further detail about him to include his name. The facts fail to establish that Queen played any role in describing the tall Indian other

than providing his name to the agents. Lastly, as previously noted during oral argument and Amri's response, there is no evidence in this case that the information and description of Sunite was inaccurate or false.

For the foregoing reasons and those presented in open court, Mr. Queen respectfully requests a verdict of acquittal on all counts.

        Respectfully submitted,

        MICHAEL QUEEN
        By Counsel,

By: _____/s/_____
        Dontaé L. Bugg
        Virginia Bar # 74042
        Bugg Law Firm, PLLC
        Attorney for Defendant Michael Queen
        4103 Chain Bridge Road, Suite 401
        Fairfax, Virginia 22030
        (703) 591-4507 (telephone)
        (703) 991-8307 (facsimile)
        dbugg@bugglawfirm.com

## **CERTIFICATE OF SERVICE**

       I hereby certify that on July 11, 2017, I will electronically file the foregoing pleading with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all parties to this action.

                                                                                                                                              /s/
                                                  Dontaé L. Bugg
                                                  Virginia Bar # 74042
                                                  Bugg Law Firm, PLLC
                                                  Attorney for Defendant Diego De La O Escobar
                                                  4103 Chain Bridge Road, Suite 103
                                                  Fairfax, Virginia 22030
                                                  (703) 591-4507 (telephone)
                                                  (703) 991-8307 (facsimile)
                                                  dbugg@bugglawfirm.com